809 A.2d 842 (2002)
355 N.J. Super. 170
FINDERNE MANAGEMENT COMPANY, INC.; Rocque Dameo; and Daniel DAMEO, Plaintiffs-Appellants,
v.
James W. BARRETT; Cigna Financial Advisors, Inc.; Tri-Core, Inc.; Ronald Redfearn; and Epic Welfare Benefit and Trust, Defendants-Respondents, and
Gerard T. Papetti and U.S. Financial Services Corporation, Defendants/Third-Party Plaintiffs-Respondents,
v.
Monumental Life Insurance Company d/b/a Commonwealth Life Insurance Company; Kentucky Commonwealth Life Insurance Company; Fulbright & Jaworski, Esquires; Hopkins & Sutter, Esquires; Donald R. Williams, Esquire; Henry de Vos Lawrie, Jr., Esquire; Jepson, French & Brooke, Esquires; Auer & Sylvester Associates; and Steven G. Shapiro, Esquire; Glenn C. Guerin; and John Rossi, C.P.A., Third-Party Defendants-Respondents.
Alloy Cast Products, Inc.; Kenneth Fisher; and Frank Panico, Plaintiffs-Appellants,
v.
Lincoln National Life Insurance Company as Successor-in-Interest to Cigna Financial Advisors, Inc.; Tri-Core, Inc.; Ronald Redfearn; Epic Welfare Plan And Trust; and Steven Shapiro, Esquire, Defendants-Respondents, and
James W. Barrett and Barrett & Barrett Associates, Defendants/Third-Party Plaintiffs-Respondents,
v.
Monumental Life Insurance Company d/b/a Commonwealth Life Insurance Company; Kentucky Commonwealth Life Insurance Company; CJA & Associates; Raymond G. Ankner; Beaven Interamerican Companies; Beaven Companies; Capital Holding Agency Group; Fulbright & Jaworski, Esquires; Riggs National Bank of Virginia; Riggs National Corp.; Riggs National Bank of Washington D.C.; Riggs Bank, N.A.; Hopkins & Sutter, Esquires; Donald R. Williams, Esquire; Henry De Vos Lawrie, Jr., Esquire; and Jepson French & Brooke, Third-Party Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued October 1, 2002.
Decided November 20, 2002.
*846 Steven J. Fram, Haddonfield, argued the cause for appellants Finderne Management Company, Inc., Rocque Dameo and Daniel Dameo in A-2873-00T2, and for appellants Alloy Cast Products, Inc., Kenneth Fisher and Frank Panico in A-5028-00T5 (Archer & Greiner, attorneys; Mr. Fram, on the briefs).
Christopher P. Leise, Westmont, argued the cause for respondents James W. Barrett in A-2873-00T2 and James W. Barrett and Barrett and Barrett Associates in A-5028-00T5 (White and Williams, attorneys; Mr. Leise, of counsel; Steven B. Roosa, on the briefs).
Bruce S. Edington, Newark, argued the cause for respondents Gerard T. Papetti and U.S. Financial Services Corporation in A-2873-00T2 (St. John & Wayne, attorneys; Mr. Edington, on the briefs).
Ellen Nunno Corbo, Newark, argued the cause for respondents Tri-Core, Inc., Ronald Redfearn and EPIC Welfare Plan and Trust in A-2873-00T2 and A-5028-00T5 (Taylor, Colicchio & Silverman, attorneys; James F. Flanagan, III, of counsel; Ms. Corbo, on the brief).
Diane Bettino, argued the cause for respondent Monumental Life Insurance Company in A-2873-00T2 and A-5028-00T5 (Reed Smith, Princeton and Hines Smith of the California bar, attorneys; Kevin Smith, Costa Mesa, CA, of counsel; Ms. Bettino, on the brief).
B. John Pendleton, Mountain Lakes, argued the cause for respondent Lincoln National Life Insurance Company in A-2873-00T2 and A-5028-00T5 (McCarter & English, attorneys; Mr. Pendleton, Jr., of counsel; Anthony F. Yacullo, Newark, on the briefs).
Ellen L. Beard argued the cause for amicus curiae United States Department of Labor in A-5028-00T5 (Dennis K. Kade, Senior Trial Attorney, on the brief).
Maurice A. Griffin, Iselin, appeared for respondents CJA & Associates, the Beaven Companies, Inc. and Raymond G. Ankner in A-5028-00T5 (Greenbaum, Rowe, Smith, Ravin, Davis & Himmel, attorneys, join in the brief of respondent Monumental Life Insurance and the Barrett respondents).
Garrett L. Joest III, Atlantic City, appeared for respondent John Rossi, C.P.A. in A-2873-00T2.
Gebhardt & Kiefer, Clinton, for respondent Glenn C. Guerin in A-2873-00T2 (Robert C. Ward, on the brief).
Louis H. Miron, Westfield, for respondent Steven Shapiro, Esquire in A-5028-00T5, joins in the brief of other respondents.
Before Judges SKILLMAN, LEFELT and WINKELSTEIN. *843 *844
*845 The opinion of the court was delivered by WINKELSTEIN, J.A.D.
In these back-to-back appeals we decide whether plaintiffs' misrepresentation claims against various insurance and other professionals are preempted under 29 U.S.C.A. § 1144(a), the preemption provision of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. *847 §§ 1001 to -1461. Plaintiffs, small business entities and their principals, assert that certain defendants misrepresented to them the potential tax benefits of an employee benefit plan in order to induce them to fund pre-retirement and post-retirement death benefits for their employees through the purchase of life insurance. The annual contributions used to purchase the policies were supposed to be tax deductible. The Internal Revenue Service ruled that they were not. As a result, plaintiffs have brought these actions seeking damages. Defendants have raised ERISA preemption as an affirmative defense. Motion judges in Somerset and Union Counties agreed with defendants' position, respectively granting motions to dismiss the complaint in Finderne, and for summary judgment in Alloy Cast. We reverse. We find plaintiffs' claims are not preempted because they do not "relate to" an ERISA plan within the meaning of ERISA's preemption provision.

I
These cases derive from a similar set of facts and present identical issues on appeal. The actions were brought by two closely held companies: Finderne Management Company, Inc., and its principals, Rocque Dameo and Daniel Dameo; and Alloy Cast Products, Inc., and its principals, Kenneth Fisher and Frank Panico. Finderne is a small trucking management company and Alloy Cast is a small foundry. Plaintiffs claim they were fraudulently induced to participate in an employee benefit plan known as the EPIC Welfare Benefit Plan (EPIC Plan or Plan). Plaintiffs' complaints assert state law claims for violation of the New Jersey Racketeering Act, N.J.S.A. 2C:41-1 to -41-6.1, fraud, equitable fraud, negligent misrepresentation, breach of fiduciary duty, conspiracy, and aiding and abetting.
The "insurance defendants" include James W. Barrett, of Barrett & Barrett Associates, a financial planner and licensed insurance producer in New Jersey, who acted as an agent of defendant Cigna Financial Advisors, Inc., an insurance and financial company, subsequently acquired by Lincoln National Corporation. Defendant Gerald T. Papetti is a financial planner and financial consultant, and an authorized agent of defendant U.S. Financial Services Corporation, a planning and consulting firm. Defendants Tri-Core, Inc., EPIC Welfare Benefit and Trust and Ronald Redfearn constitute the "Tri-Core defendants." Redfearn, Tri-Core's president, is an insurance salesman who created and promoted the EPIC plan; Tri-Core was set up to administer the plan. EPIC Welfare Benefit and Trust was established as a multiple employer welfare benefit trust, administered and controlled by Tri-Core. Defendant Steven Shapiro is an attorney who gave legal opinions for Tri-Core concerning the validity of the EPIC Plan and is a named defendant only in Alloy Cast. Defendants filed third, fourth, and fifth-party complaints against various attorneys and other professionals who had rendered opinions concerning the tax consequences of the Plan, insurance consultants who had designed and marketed the insurance policies used by the Plan, insurance companies who issued the policies, and Plan trustees.[1]
*848 After being served with the complaints, defendants in both actions removed the lawsuits to federal district court, asserting ERISA preemption. Judge Lifland, in Alloy Cast, and Judge Thompson, in Finderne, remanded the cases to state court finding a lack of federal subject matter jurisdiction. Subsequent to the remands, in September 2000, Barrett moved to dismiss the Finderne complaint. The remaining defendants and third-parties either joined in the motion or individually moved to dismiss the complaints based on the doctrine of express ERISA preemption pursuant to 29 U.S.C.A. § 1144.
In a written opinion and by order dated December 8, 2000, the court dismissed the complaint against Barrett as being preempted by ERISA. In subsequent orders the judge dismissed the complaints against the remaining defendants and third-parties.
Prior to the order dismissing their complaint, on November 29, 2000, the Finderne plaintiffs had moved to amend the complaint to include a federal RICO[2] count. The court never addressed the motion; it was returned to plaintiffs' counsel by the court staff on December 12 as a result of the judge's prior order dismissing the underlying case. Plaintiffs' motion for reconsideration was denied.
On December 20, 2000, the Alloy Cast plaintiffs moved to amend the complaint to add a federal RICO count. Motions for summary judgment were later filed by defendants and third-party defendants. On April 12, 2001, the Union County motion judge granted defendants' and the third-parties' motions for summary judgment, dismissing the complaints. The judge also denied as moot plaintiffs' motion for leave to file an amended complaint.
Plaintiffs in both actions appealed.[3] In Alloy Cast, the United States Department of Labor was granted leave to appear as amicus curiae.

II
In 1984, Congress, concerned that employers were taking deductions for expenses which had not yet been incurred, amended the Internal Revenue Code to limit employers' deductions for contributions to welfare benefit plans. Booth v. Commissioner of Internal Revenue, 108 T.C. 524, 565-66, 1997 WL 328581 (1997) (citing the Deficit Reduction Act of 1984, Pub. L No. 98-369, §§ 511(a) and 512(a), 98 Stat. 484, 854 to 862 (1984)). Congress did, however, provide a tax exemption for "any welfare benefit fund which is part of a 10 or more employer plan." Id. at 567; 26 U.S.C.A. § 419A(f)(6). The amendment permits employers eligible for the exemption to deduct their contributions as business expenses so long as another entity organizes and administers the fund. See 26 U.S.C.A. § 162.
Redfearn formed Tri-Core in 1986 to market welfare benefit plans. He developed the EPIC Plan, which was intended to comply with ERISA by providing a ten or more employer plan under 26 U.S.C.A. § 419A(f)(6). The Plan provided a death benefit for employees by the use of a trust funded by term life insurance purchased by the employer from an insurance company designated by Tri-Core. The Plan *849 provides pre-retirement death benefits and, post-retirement, for continuation of the death benefit and conversion to an individual policy with the ability to borrow against the policy. On behalf of the prospective insurers, Redfearn contacted insurance agents around the country to market the program. Tri-Core and the insurance agents contracted with the insurance companies. Each would receive commissions from the sale of the life insurance. Although Redfearn relied on a supportive legal opinion when he set up the Plan, he acknowledged that he was told by various certified public accountants that the Plan might not qualify for favorable tax treatment.
Redfearn met with Barrett and Papetti in 1989. He said he wanted to market the EPIC Plan to close corporations with small numbers of employees. He said the contributions to the Plan were tax deductible and he provided Barrett with copies of opinion letters supporting their deductibility.
According to the Finderne plaintiffs, Barrett approached them in early 1991. He recommended that the Dameo brothers discontinue their current plan and participate in the EPIC Plan. Barrett and Papetti represented that contributions to the Plan were tax deductible; and from 1991 to 1998 they "repeatedly" reassured plaintiffs of this claim.
The agreement between Finderne and Tri-Core was effective January 1, 1991. Under its terms, Finderne created a trust to provide a death benefit to its employees funded by group term life insurance purchased with contributions made to the EPIC Plan. The insurance provided an option permitting each participant to convert to an individually owned conversion policy at the employee's termination of employment or death with tax-free income generated by borrowing against the policy. In other words, the benefits would include tax-free deductions to purchase the insurance and a tax-free loan after conversion.
Barrett also approached Alloy Cast. According to Fisher, one of Alloy Cast's principals, Barrett told him that the EPIC Plan was the "perfect vehicle" to replace Alloy Cast's defined benefit plan and emphasized the tax deductibility of the contributions and the tax benefits upon retirement. The agreement between Alloy Cast and Tri-Core was dated December 1, 1990, and is similar to Tri-Core's agreement with Finderne. The effect of the agreement was that Alloy Cast created a trust to provide the benefits to its employees. The insurance premium payments were to be applied first to the term policy, then to commissions and finally to a reserve fund. This fund would be used to pay for individual conversion policies after retirement in later years when the premiums would be more costly. In 1993, Barrett and Redfearn reassured Fisher of the tax benefits of continued participation in the Plan.
Barrett recalled speaking to Redfearn in 1992 or 1993 about a 1991 article written by a tax attorney questioning the deductibility of contributions to multiple employer welfare benefit plans. In late 1994, Tri-Core hired Shapiro, who prepared four or five opinion letters for Redfearn and Tri-Core regarding the continuing legal viability of the EPIC Plan.
In May 1995, the IRS questioned whether certain welfare benefit plans should receive favorable tax treatment under 26 U.S.C.A. § 419A(f)(6). The United States Tax Court, in Booth, endorsed the IRS position in June 1997, when it held that a benefit plan similar to EPIC was not a "10 or more employer plan" as described in § 419A(f)(6) because "plan" meant "that there must be a single pool of funds for use by the group as a whole...." Booth, supra, 108 T.C. at 571. The IRS did not *850 interpret the statutory language to include a program, like the EPIC Plan, "where multiple employers have contributed funds to an independent party to hold in separate accounts until disbursed primarily for the benefit of the contributing employer's employees in accordance with unique terms established by that employer." Ibid.
The following September, the IRS notified Finderne that it was disallowing the deductions it had taken for its contributions to the EPIC Plan. In November 1997, Alloy Cast withdrew from the EPIC Plan because, according to Fisher, the company came to the conclusion that the Plan was "bogus." In May 1998, the IRS notified Alloy Cast that it was disallowing deductions taken for its Plan contributions. The record is unclear as to the amount Finderne or Alloy Cast paid to the IRS.
A number of Barrett's other clients who participated in the EPIC Plan also were audited by the IRS. In 1998, after the various tax audits, Tri-Core stopped marketing the EPIC Plan in New Jersey. At its peak in 1998, 350 companies participated in the EPIC Plan; as of September 2000, only eighteen companies were participating.

III
Plaintiffs initially contend that their claims are not preempted because the EPIC Plan is not an ERISA plan. "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans ... [by setting] various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility, for both pension and welfare plans." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90-91, 103 S.Ct. 2890, 2896-97, 77 L.Ed.2d 490, 497 (1983). ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C.A. § 1144(a). "The term `State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C.A. § 1144(c)(1). Consequently, ERISA embraces state common law claims. Griggs v. E.I. Dupont de Nemours & Co., 237 F.3d 371, 378 (4th Cir.2001).
ERISA preemption "can have profound consequences because the remedies under ERISA are far more limited than under state common law causes of action." Barbara J. Williams, ERISA and State Common Law Causes of Action, 192 N.J. Law. 29 (1998); see also 29 U.S.C.A. § 1109; 29 U.S.C.A. § 1131; 29 U.S.C.A. § 1132. ERISA preemption is an affirmative defense. Dueringer v. General Am. Life Ins. Co., 842 F.2d 127, 130 (5th Cir.1988) (citations omitted). Whether a state law claim is preempted by ERISA is a question of law which is reviewed de novo. Wilson v. Zoellner, 114 F.3d 713, 715 (8th Cir.1997) (quoting Home Health, Inc., v. Prudential Ins. Co., 101 F.3d 600, 604 (8th Cir.1996)); Airparts Co., Inc. v. Custom Benefit Serv. of Austin, Inc., 28 F.3d 1062, 1064 (10th Cir.1994) (citations omitted).
ERISA defines a "plan" as "an employee welfare benefit plan." 29 U.S.C.A. § 1002(3). The term "employee welfare benefit plan" means any plan established by an employer, which may provide a multitude of employee benefits, including medical, death and retirement income. 29 U.S.C.A. § 1002(1)-(3). "The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding circumstances and facts from the point of view of a reasonable person." Thompson v. American Home Assurance Co., 95 F.3d 429, 434 (6th Cir.1996) (citations omitted). An ERISA "plan" is established if from the surrounding circumstances *851 a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing and the procedures for receiving benefits. Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th Cir. 1982). In addition, a court must decide whether the employer established or maintained the plan with the intent to provide benefits to its employees. Thompson, supra, 95 F.3d at 435 (citations omitted).
To constitute a multiple employer "employee welfare benefit plan" under ERISA, the group of employers that establishes and maintains the plan must be a bona fide association of employers brought together by a common economic or representation interest, unrelated to the provision of benefits, and the employer members must exercise control, either directly or indirectly, both in form and substance, over the plan. Gruber v. Hubbard Bert Karle Weber, Inc., 159 F.3d 780, 787 (3d Cir.1998) (internal quotations and citations omitted). Multiple employer plans established merely for entrepreneurial purposes, such as the marketing of insurance products or services, are not considered ERISA plans. Id. at 786 (citations omitted); Taggart Corp. et. al. v. Life & Health Benefits Admin. Inc. et. al., 617 F.2d 1208, 1210 (5th Cir.1980).
Here, the EPIC Plan is not a multiple employer benefit plan.[4] The Plan was not formed by a bona fide association of employers tied together by a common economic interest. The employers were not induced to participate in the Plan based on their common characteristics. They have no common interest. Rather, the Plan is a series of individual benefit plans, established for the plaintiff employers by the defendant insurance producers for entrepreneurial purposesto market group life insurance products and services. The employers did not participate in the overall administration of the EPIC Plan; Tri-Core established the Plan and controlled its global operation. Under these facts, the EPIC Plan does not qualify as an ERISA plan.
That conclusion does not, however, end the inquiry. In these cases, each plaintiff employer, through its participation in the EPIC Plan, has effectively established its own ERISA plan. The requirements necessary to infer an ERISA plan include the intended benefits; the intended beneficiary; the source of financing; and a procedure for obtaining benefits. See Deibler v. United Food & Commercial Workers' Local Union 23, 973 F.2d 206, 209 (3rd Cir.1992); Donovan, supra, 688 F.2d at 1373. Here, each plaintiff employer set up a trust to act as a vehicle to deliver to its employees a program of benefits promised by the EPIC Plan. The employers provided death benefits to their employees through life insurance purchased by the employers. Life insurance is the intended benefit; the employees are the intended beneficiaries; the employers' contributions established the source of funding; and the individual employers set up internal procedures to deliver the benefits to their employees. Under these facts, the requirements necessary to infer an ERISA plan have been met. See also Johnston v. Paul Revere Life Ins. Co., 241 F.3d 623, 626, 629 (8th Cir.2001); Bridges v. Principal Life Ins. Co., 132 *852 F.Supp.2d 1325, 1328 (M.D.Ala.2001). As a result, the plaintiff employers have established single employer ERISA plans even though the EPIC Plan itself does not qualify as an ERISA plan.

IV
This conclusion brings us to the next, and most significant, issue: whether plaintiffs' claims are preempted by ERISA. Traditionally, "where federal law is said to bar state action in fields of traditional state regulation, ... the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear manifest purpose of Congress." New York Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655, 115 S.Ct. 1671, 1676, 131 L.Ed.2d 695, 704-05 (1995).
The statutory provision at issue, § 514(a) of ERISA, states that ERISA "`shall supersede any and all State laws insofar as they ... relate to any employee benefit plan' covered by the statute, 29 U.S.C. § 1144(a)." Travelers, supra, 514 U.S. at 651, 115 S.Ct. at 1675, 131 L.Ed.2d at 704 (citations omitted). ERISA preemption has applied where the state law had a connection with or referenced to an employee benefit plan. Shaw, supra, 463 U.S. at 96-97, 103 S.Ct. at 2899-2900, 77 L.Ed.2d at 501. Congress's intent was to use the words "relate to" in their "broad sense," in light of the legislative history which had rejected more limited language to eliminate the threat of conflicting or inconsistent state and local regulations. Shaw, supra, 463 U.S. at 98-99, 103 S.Ct. at 2900-2901, 77 L.Ed.2d at 501-02. This same broad interpretation was reiterated in Ingersoll-Rand v. McClendon, 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474, 484 (1990), where the Court stated: "A law `relates to' an employee benefit plan ... if it has a connection with or reference to such a plan.... [A] state law may `relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." (internal quotations and citations omitted). The Court added, however, that "notwithstanding its breadth, we have recognized limits to ERISA's pre-emption clause." Ibid.
Claims of preemption begin with a presumption that Congress did not intend to supplant state law. Travelers, supra, 514 U.S. at 654-55, 115 S.Ct. at 1676, 131 L.Ed.2d at 704-05. In Travelers, the Court steered away from an analysis that turned on an interpretation of the language of the statute, and chartered a course toward an examination of Congressional intent in enacting the ERISA preemption clause. Travelers, supra, 514 U.S. at 655, 115 S.Ct. at 1677, 131 L.Ed.2d at 705.
The objective of the ERISA preemption clause was to remove the threat of conflicting and inconsistent state and local regulations; to "avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." Travelers, supra, 514 U.S. at 657, 115 S.Ct. at 1677-78, 131 L.Ed.2d at 706. ERISA preempts state laws that mandate employee benefit structures or their administration. Ibid. "[P]re-emption does not occur ... if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability." Travelers, supra, 514 U.S. at 661, 115 S.Ct. at 1680, 131 L.Ed.2d at 708-09 (quoting Dist. of Columbia v. Greater Washington Bd. of Trade, 506 U.S. 125, 130 n. 1, 113 S.Ct. 580, 583 n. 1, 121 L.Ed.2d 513, 520 n. 1 (1992) (internal quotations and citations omitted)). The Travelers Court found nothing in the language of the ERISA statute or "the context of its passage" *853 which indicated Congress chose to displace laws relating to matters "historically" of local concern. Ibid. (citations omitted). See also California Div. of Labor Standards Enforcement v. Dillingham Const., 519 U.S. 316, 324, 117 S.Ct. 832, 837, 136 L.Ed.2d 791, 799 (1997) (using the Travelers analysis to determine that California's prevailing wage statute did not relate to employee welfare benefit plan within meaning of ERISA's preemption clause). The New Jersey Supreme Court has also recognized the trend "in recent federal precedent" which has limited ERISA preemption of general applicable state laws. The Bd. of Trustees of Operating Engineers Local 825 Fund Service Facilities v. LBS Construction Co., Inc., 148 N.J. 561, 568, 691 A.2d 339 (1997) (citation omitted).
Generally, four types of laws have been held to "relate to" a benefit plan for purposes of ERISA preemption: those that regulate the type of benefits or terms of ERISA plans; create reporting, disclosure, funding or vesting requirements for the plans; provide rules for calculating the amount of benefits to be paid under the plans; and provide remedies for misconduct growing out of the administration of the plans. Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 990 (10th Cir.1999) (citations omitted); Coyne & Delany Co. v. Selman, 98 F. 3d 1457, 1468-69 (4th Cir.1996). In examining the effect of a state law on an ERISA plan, factors generally considered include whether the state law negates an ERISA plan provision; affects relations between primary ERISA entities; impacts the structure or administration of ERISA plans; or has an economic impact on ERISA plans. Other factors are whether preemption of the state law is consistent with other ERISA provisions; and whether the law is an exercise of traditional state power. Wilson, supra, 114 F.3d at 717.
Here, plaintiffs assert misrepresentation claims. They argue that defendants misrepresented the tax consequences of the benefit plans to induce plaintiffs to purchase life insurance. Plaintiffs allege that while Barrett and Redfearn earned millions of dollars in commissions from the insurance sales, plaintiffs lost substantial sums of money because the IRS decided that plaintiffs' contributions were not tax deductible. Plaintiffs claim that defendants knew of the potential adverse tax consequences, and not only failed to tell plaintiffs, but affirmatively represented that the contributions would be tax deductible.
Although our State courts have not addressed the question of ERISA preemption in this context, a number of federal courts have considered similar issues. In Morstein v. National Ins. Servs., Inc., 93 F.3d 715 (11th Cir.1996), cert. denied, 519 U.S. 1092, 117 S.Ct. 769, 136 L.Ed.2d 715 (1997), the issue was whether state law claims for fraudulent inducement to purchase, and negligent processing of an application for, an ERISA-governed insurance plan, were preempted. The plaintiff, a sole shareholder and one of two employees of a close corporation, brought claims against the insurance agent and his agency. He alleged that the agent misrepresented that the plan would provide the same coverage for preexisting conditions as did the plaintiff's previous plan. Id. at 716-17. The court's analysis focused on whether the state law claims affected relations among principal ERISA entities. Id. at 722. Because the insurance agent and his agency were not ERISA entities, and had no control over the payment of benefits or the plaintiff's rights under the plan, the court held that the plaintiff's claims were not preempted. Id. at 722-23. The *854 court added that holding insurance agents accountable in this context would further Congress's purpose in enacting ERISA by protecting "the interests of employees and other beneficiaries of employee benefit plans." Id. at 723.
The Eighth Circuit considered the preemption question in an action brought by an employee against an insurance agent alleging negligent misrepresentation with respect to the scope of coverage of the insurance policy the agent sold to the plaintiff's employer. Wilson, supra, 114 F.3d at 715. The court did not find preemption because the plaintiff was not seeking benefits under the ERISA plan; and the claim did not affect the relations between the ERISA principals, impact the structure or administration of the plan, have a direct economic impact on the plan, or involve the exercise of traditional state power in adjudicating claims of negligent misrepresentation. Id. at 718-20.
In Woodworker's Supply, supra, 170 F.3d at 988-89, the plaintiff company brought a fraud action against an insurance company that sold it coverage, alleging that the insurer was aware that the rates set in the policy were unreasonably low at the time it sold the coverage, which resulted in the plaintiff incurring large rate increases. Finding no ERISA preemption, the court reasoned that the defendant was being sued with respect to its "pre-plan activity ... as a seller of insurance," not with respect to its status as administrator or fiduciary of an employee benefit plan. Id. at 991-92. "Holding insurers accountable for pre-plan fraud does not affect the administration or calculation of benefits, nor does it alter the required duties of plan fiduciaries." Id. at 992 (citations omitted).
The Fourth Circuit examined ERISA preemption in the context of a professional malpractice action against the defendants in their capacities as designers of a group health insurance plan. Coyne, supra, 98 F.3d 1457. The defendants, creators and administrators of a self-insured employee health benefit plan, assured the plaintiffs that the plan would cost less than its current insurance and still provide the same coverage. Id. at 1461. The plaintiff company claimed it did not receive the promised coverage. Id. at 1470. Describing the claim as a "garden-variety professional malpractice claim," the court, relying on Travelers, found no preemption. Id. at 1467. It reasoned that the defendants were sued in their capacities as insurance professionals, not as plan administrators, and that any malpractice took place before they began to act in their capacities as plan administrator and plan supervisor. Id. at 1467, 1471. See also Trustees of the AFTRA Health Fund v. Biondi, 303 F.3d 765 (7th Cir.2002) (finding common-law fraud claim, as traditional area of state regulation, not preempted because claim did not subject plan administrators and plan sponsors to conflicting directives among states or between states and federal government; create potential conflict in substantive law; threaten congressional call for national uniformity in administration of ERISA plans; mandate employee benefit structures or their administration; or bind plan administrators to particular choices); LeBlanc v. Cahill, 153 F.3d 134, 149-51 (4th Cir.1998) (no preemption of state common-law claims against investment bankers who misrepresented investment opportunities); Geweke Ford v. St. Joseph's Omni Preferred Care, Inc., 130 F.3d 1355, 1358 (9th Cir.1997) (no ERISA preemption as to plan's insurers); Gulf Coast Alloy Welding, Inc. v. Legal Security Life Ins. Co., 981 S.W.2d 239 (Tex. App.1998) (misrepresentation claim against insurer not preempted).
*855 In Harmon City v. Nielsen & Sr., 907 P.2d 1162 (Utah 1995) the court concluded ERISA did not preempt a claim that alleged legal malpractice in connection with a lawyer's advice regarding compliance with ERISA, because the cause of action did not "relate to" an ERISA plan. The court's analysis is particularly instructive. The defendant attorneys provided an opinion letter rendering advice concerning a benefits plan alleged to be in compliance with ERISA. Id. at 1165. Determining that the "most salient" consideration was whether the state law in question regulated "the terms, duties or administration of ERISA plans," the court cited a legion of both federal and state cases for the proposition that ERISA does not preempt "state malpractice or similar negligence or fraud actions against outside non-fiduciary providers of professional services to ERISA plans." Id. at 1169 (citations omitted). In considering whether the need to reference the benefit plan to resolve the issues in the lawsuit required preemption, the court stated:
Although plaintiffs' claims require reference to ERISA law to determine whether defendants met their duties under generally applicable state contract and professional malpractice law, ERISA law is not implicated beyond its mere subsidiary role as a reference for the appropriate standard of care. Such a tangential role of ERISA law does not relate these state law claims to the Plan itself.
[Id. at 1170 (citations omitted)].
In light of the principles established in these cases, we conclude that with respect to the "insurance defendants," plaintiffs' claims are not subject to ERISA preemption. None of the insurance defendants were ERISA entities or fiduciaries; their role was to create or market the EPIC Plan or the insurance used to fund the Plan. The claims against the insurance agents and the companies they represented involve preplan misrepresentations. Plaintiffs' claims will not impact the structure or administration of the ERISA plans; they do not relate to any state laws that regulate the type of benefits or terms of the ERISA plan; they are unrelated to laws creating reporting, disclosure, funding or vesting requirements for the plans; and they do not affect the calculation of plan benefits. Nor do they seek to regulate relations among traditional ERISA entities.
Plaintiffs' claims sound in negligence and common-law fraud. State laws pertaining to negligence and fraud are laws of general application and involve traditional areas of state regulation; they do not specifically target ERISA plans. Holding the insurance agents and insurers responsible for the misrepresentations claimed in plaintiffs' complaints will advance, rather than inhibit, the policy behind ERISA. See Stetson v. PFL Insurance Co., 16 F.Supp.2d 28, 35 (D.Me.1998) (finding congressional intent to protect the interest of participants and beneficiaries of employee benefit plans not fostered by preemption of state law claim by participants or beneficiaries of plan which target misconduct of insurer and its agents prior to establishment of plan).
In support of their position that plaintiffs' claims for negligent and intentional misrepresentation are preempted by ERISA because they were predicated upon the existence of the Plan, defendants rely on Crumley v. Stonhard, Inc., 920 F.Supp. 589, 590-91 (D.N.J.), aff'd o.b., 106 F.3d 384 (3rd Cir.1996); Griggs, supra, 237 F.3d at 379; and Farr v. U.S. West Communications, 151 F.3d 908, 911 (9th Cir.1998), cert. denied, 528 U.S. 1116, 120 S.Ct. 935, 145 L.Ed.2d 814 (2000). However, these cases are not analogous. In *856 Crumley and Farr, unlike plaintiffs in this case, the plaintiffs sought benefits owed to them under the ERISA plan. Crumley, supra, 920 F.Supp. at 591; Farr, supra, 151 F. 3d at 913. In Griggs, the plaintiff incurred tax liability based on an alleged breach of fiduciary duty by his employer which defeated the reason he elected early retirement under the ERISA plan's provisions. Griggs, supra, 237 F.3d at 373. The plaintiff's claim concerned a core function performed by an ERISA fiduciary who provided information about the ERISA plan benefits. The claim did not concern preplan misrepresentations. Crumley, Farr, and Griggs were brought by plan participants against the plan with respect to representations made by a plan fiduciary. That is not the case before this court.
Here, plaintiffs' state law claims include an alleged violation of the New Jersey Racketeering Act, fraud, negligence, breach of fiduciary duty, conspiracy, and aiding and abetting. No matter how identified, the thrust of each cause of action is dependent upon whether defendants negligently or intentionally misrepresented to plaintiffs that the Plan qualified for preferential tax treatment when they knew, or should have known, that it did not. This issue does not require an examination of the particulars of an ERISA plan. Plaintiffs are not seeking entitlement to benefits under an ERISA plan. Rather, the claim turns on the duties of defendants outside of the ERISA context; reference to the ERISA plan will be peripheral to the issues in this case. We agree with the Department of Labor's position that the terms of the ERISA plans will be no more than factual background for the state law claims. We conclude that plaintiffs' claims against defendants for actions taken to market the Plan or induce plaintiffs to establish or continue to participate in the Plan are not preempted by ERISA.
We next consider preemption as it affects the Tri-Core defendants, who were hired as plan administrators after the EPIC Plan took effect. First, before becoming ERISA fiduciaries, they were involved in the marketing of the EPIC Plan as were the remaining defendants. Based on our prior analysis, ERISA does not preempt claims against them for actions taken in that regard. A distinction must be drawn though between the marketing of the EPIC Plan and actions the Tri-Core defendants took in furtherance of their positions as plan administrators after the Plan was established. Where a plaintiff's claim arises directly from the administration of a plan, ERISA preemption is warranted. See Consolidated Beef Ind., Inc. v. New York Life Ins. Co., 949 F.2d 960, 963-64 (8th Cir.1991), cert. denied, 503 U.S. 985, 112 S.Ct. 1670, 118 L.Ed.2d 390 (1992); Gibson v. Prudential Ins. Co. of Am. et. al., 915 F.2d 414, 416 (9th Cir.1990) (citations omitted). Here, the record is insufficient to permit us to determine which claims affect the Tri-Core defendants in their capacity as plan administrators. A complete factual record is necessary before it can be determined whether claims against the Tri-Core defendants for their activities after the Plan became effective are preempted.

V
Next, we consider the claims against defendant Shapiro, who was retained by the Tri-Core defendants to give advice concerning the tax benefits associated with the EPIC Plan. He was an outside consultant, not a fiduciary or an administrator of the plan. As such, the claims against Shapiro are not preempted. See Airparts, supra, 28 F.3d at 1063-64, 1066 (finding claim against outside consultant who provided benefit plan consultation not preempted because consultant not a fiduciary *857 or plan administrator, and claim had no effect on relations among ERISA principals).

VI
Finally, we address plaintiffs' motions to amend the complaints to permit federal RICO counts. The Union County judge decided not to consider the Alloy Cast motion because the motion had been rendered moot by his decision to dismiss the complaint. The Somerset County judge never addressed the motion; it was returned by court staff after the complaint had been dismissed. In light of our decision to reverse on the preemption issue, we remand the question for the trial courts' consideration. We caution, however, that although a decision to grant or deny a motion to amend a complaint is subject to the discretion of the trial court, leave to amend is to be freely granted, and denial of such a motion is usually only required when there would be prejudice to the other party or the movant was dilatory in the prosecution of the claim. See Brown v. Twp. of Old Bridge, 319 N.J.Super. 476, 491, 725 A.2d 1154 (App.Div.), certif. denied, 162 N.J. 131, 741 A.2d 99 (1999); Brower v. Gonnella, 222 N.J.Super. 75, 79-81, 535 A.2d 1006 (App.Div. 1987); R. 4:9-1.

VII
To summarize, we reverse the decision of the motion judges in both Finderne and Alloy Cast which dismissed plaintiffs' claims against defendants based on ERISA preemption. Consequently, the orders dismissing all third-party complaints and cross-claims are similarly reversed and the claims reinstated. We find no ERISA preemption with regard to any claim; subject, however, to further review of the claims against the Tri-Core defendants arising out of their activities after the Plan became effective. Decisions concerning those specific claims must abide the development of a complete factual record. We also remand for a reassessment of plaintiffs' motions to amend their complaints to include federal RICO counts. We do not retain jurisdiction.
Reversed and remanded.
NOTES
[1] Among the third-party defendants named in Finderne is John Rossi, a certified public accountant. Rossi was named as a third-party defendant by Papetti and U.S. Financial, who alleged accountant's negligence. Rossi was also subject to a cross-claim for contribution and indemnification by Barrett on the same theory. We affirm, in a separate opinion of this date, the Law Division's decision to dismiss those claims. Finderne Management Co., Inc. v. Barrett, 355 N.J.Super. 197, 809 A.2d 857 (App.Div.2002).
[2] The Racketeer Influenced Corrupt Organizations Act, 18 U.S.C.A. §§ 1961 to 1968 (RICO).
[3] On December 29, 2000, plaintiffs and others filed a complaint against defendants in federal court, District of New Jersey, captioned National Security Systems, Inc. v. Iola, Docket No. CV-00-6293, raising ERISA and other claims; the action has been stayed by Judge Thompson pending the outcome of this appeal.
[4] While making the argument that the EPIC Plan is not an ERISA plan, plaintiffs concede that as employers they have established their own ERISA plans. As the Finderne plaintiffs state: "Although the EPIC Plan is clearly not an ERISA plan, it appears that Finderne established its own, single-employer ERISA plan by virtue of arranging to provide benefits to its employees." Alloy Cast similarly concedes that the ERISA plan at issue is the single employer plan it has sponsored, not the EPIC Plan.