809 A.2d 857 (2002)
355 N.J. Super. 197
FINDERNE MANAGEMENT COMPANY, INC.; Rocque Dameo; and Daniel Dameo, Plaintiffs,
v.
James W. BARRETT, Defendant/Appellant, and
Cigna Financial Advisors, Inc.; Tri-Core, Inc.; Ronald Redfearn; and Epic Welfare Benefit and Trust, Defendants.
Gerard T. Papetti and U.S. Financial Services Corporation, Defendants/Third-Party Plaintiffs/Appellants,
v.
John Rossi, C.P.A., Third-Party Defendant/Respondent, and
Monumental Life Insurance Company d/b/a Commonwealth Life Insurance Company; Kentucky Commonwealth Life Insurance Company; Fulbright & Jaworski, Esquires; Hopkins & Sutter, Esquires; Donald R. Williams, Esquire; Henry de Vos Lawrie, Jr., Esquire; Jepson, French & Brooke, Esquires; Auer & Sylvestor Associates; Glenn C. Guerin; and Steven G. Shapiro, Esquire, Third-Party Defendants.
Superior Court of New Jersey, Appellate Division.
Argued October 1, 2002.
Decided November 20, 2002.
*859 Bruce Edington, Newark, argued the cause for appellants Gerard T. Papetti and U.S. Financial Services Corporation (St. John & Wayne, attorneys; Mr. Edington, on the briefs).
Garrett L. Joest, III, Atlantic City, argued the cause for respondent John Rossi.
Christopher P. Leise, Westmont, appeared for appellant James W. Barrett (White and Williams, attorneys; Mr. Leise, of counsel; Steven B. Roosa, Westmont and Edward M. Koch, Philadelphia, PA, on the briefs).
Before Judges SKILLMAN, LEFELT and WINKELSTEIN.
*858 The opinion of the court was delivered by WINKELSTEIN, J.A.D.
This appeal addresses claims of accounting malpractice against third-party defendant John Rossi, a certified public accountant, by defendant James W. Barrett and third-party defendants Gerard T. Papetti and U.S. Financial Services Corporation. We affirm the July 7, 2001, order of the trial judge dismissing all claims against Rossi because we find Rossi owed no duty to Barrett, Papetti or U.S. Financial.

I
To understand the context of the claims against Rossi, we must first briefly review the underlying allegations plaintiffs have made against defendants. Plaintiffs Finderne Management Company and Alloy Cast Products, small business entities, and their respective principals, assert they were fraudulently induced to establish a welfare benefit plan by defendants James W. Barrett, Gerard T. Papetti and Ronald Redfearn and the entities they represented. The plan, known as the EPIC Plan (or Plan), called for the employers to fund both pre-retirement and post-retirement death benefits for their employees through the purchase of life insurance.
Plaintiffs claim that prior to establishing the Plan, and during the life of the Plan, defendants represented to them that plaintiffs' contributions to the Plan, which were to be used to pay the life insurance premiums, would be tax deductible.[1] In 1997 the Tax Court, in Booth v. Comm'r. of Internal Revenue, 108 T.C. 524, 1997 WL 328581 (1997), concluded that plans similar to the EPIC Plan did not qualify for favorable *860 tax treatment. Subsequently, the Internal Revenue Service disallowed both Finderne's and Alloy Cast's deductions for Plan contributions. Plaintiffs assert that defendants misrepresented the tax benefits of the Plan, causing plaintiffs damages.[2]
In this appeal we consider whether the motion judge erred when she dismissed Barrett's claim for contribution and indemnification and Papetti's and U.S. Financial's third-party complaint against Rossi. They assert Rossi was negligent because (1) he failed to reinstate the life insurance policies which funded Finderne employees' participation in the EPIC Plan; (2) caused them to forfeit the conversion privilege afforded by the policies; (3) negligently allowed the policies to lapse; (4) failed to recommend that Finderne appeal certain deficiency determinations made by the IRS; and (5) negligently advised plaintiffs to enter into a settlement with the IRS that was detrimental to plaintiffs' interests. Since this case arises out of the same facts as Finderne I, which we incorporate by reference, we will review only the facts and procedural posture relevant to the claims against Rossi.
Rocque Dameo and Daniel Dameo are principals of Finderne which established the EPIC Plan at the behest of defendants Barrett, Papetti and Redfearn. Papetti was an agent of U.S. Financial Services. Monumental Life Insurance Company was the insurer under the Finderne EPIC Plan.
Rossi and his accounting firm had been retained by Finderne in 1996. One of Rossi's responsibilities was to oversee and facilitate plaintiffs' participation in the EPIC Plan which took effect in 1991. When the IRS issued a notice of deficiency to Finderne, Rossi reviewed Finderne's participation in the Plan and advised Finderne not to continue to contribute to the Plan. Finderne, on the advice of Rossi, ceased paying its life insurance premiums. In March 1998, Barrett sent Rocque Dameo a letter warning him that a failure to pay the premium would cause a lapse in coverage. The following December, a representative of the Plan sent Finderne a notice that the company had not paid its annual premium. In February 1999 Rossi sent Tri-Core, Inc., an entity established by Redfearn to administer the Plan, applications for reinstatement and conversion of the policies for Rocque and Daniel Dameo, along with the appropriate checks to cover the cost of the premiums. The insurance policies contained a provision which would permit the insureds to convert them to individually owned policies with tax-free income generated by borrowing against the policies. In an April 23, 1999, letter, Monumental Life informed Tri-Core that the policies could not be reinstated or converted because the policies were only paid-up through September 1, 1997, and conversion could not take place more than thirty-one days after the termination date. As a result, the Dameos lost the death benefit and conversion privileges under the policy.

II
Papetti and U.S. Financial filed a third-party complaint against Rossi alleging he was liable for negligence, contribution and indemnification, while Barrett cross-claimed *861 against Rossi for contribution and indemnification. They claimed plaintiffs' loss of benefits, resulting from the cancellation of the insurance policies, contributed to plaintiffs' damages. In the Law Division, Rossi moved pursuant to R. 4:6-2(e) to dismiss Papetti and U.S. Financial's third-party complaint and Barrett's claim for contribution and indemnification on the grounds that Rossi is immune from suit based on the statutory accountant's immunity established in N.J.S.A. 2A:53A-25. The motion judge granted the motion on July 7, 2000.
Barrett claims N.J.S.A. 2A:53A-25 is not applicable because Rossi's services as they pertain to the EPIC Plan were not professional accounting services within the meaning of the statute. In her opinion addressing the claims of Barrett, Papetti and U.S. Financial, the judge rejected this position. She said:
[I]t is clear that the plaintiff went to the third party defendant Rossi after the plaintiff received correspondence from the Internal Revenue Service indicating that the plans urged upon the plaintiff by Barrett would in fact not secure the tax benefits that the plaintiff had intended and sought from the third party defendant the advice that he could give with respect to the tax accounting issue, namely, the deductibility arising from the plan. The suggestion that this work by Rossi was anything other than work in his professional capacity as an accountant is simply entitled to no weight whatsoever.
The court concluded that the privity provisions of the statute applied, resulting in Rossi's immunity:
[T]he defendants do not allege that they relied upon [Rossi's] professional opinion nor that they had any other relationship with him. Indeed, [they] do not assert that when Rossi was giving advice to the plaintiff, that Rossi contemplated or was aware that anyone other than the plaintiff would rely upon his advice and would act in accordance with his advice. While he might in the broadest sense of the word have supposed that there were others who had sold these investments to this plaintiff who might be affected by his advice, there is simply no suggestion whatsoever that he was aware in any way they would rely upon it and indeed they do not even contend that they did. In this regard, the application of the statute is clear and the Count in the complaint pursuant to which these defendants third party plaintiffs seek to impose liability upon Rossi for professional negligence cannot stand.
Finally, the judge, citing Lawlor v. Cloverleaf Mem'l Park, Inc., 101 N.J.Super. 134, 243 A.2d 293 (Law Div.1968), rev'd on other grounds, 106 N.J.Super. 374, 256 A.2d 46 (App.Div.1969), rev'd on other grounds, 56 N.J. 326, 266 A.2d 569 (1970), rejected Barrett's (and Papetti's and U.S. Financial's) contention regarding contribution and indemnification:
There is no question ... that Rossi is not a joint tortfeasor with these defendants. While it is true that any negligence he might have committed would render him liable to the plaintiff as a successive tortfeasor, there is no ground upon which these defendants third party plaintiffs can independently visit that liability upon him.... While there is no doubt but that the plaintiff could pursue both of them, there is equally no doubt but that the first tortfeasor, here Barrett and the other defendants, cannot assert a contribution claim against the second tortfeasor.... The Lawlor case is persuasive with respect to the rights of these defendants as against this third party defendant. It is clear based upon Lawlor that there were independent *862 wrongs which led to the plaintiffs' damages and there is no ground on which these defendants may assert that the defendant Rossi is liable to them either directly or in contribution or indemnification.

III
The first question is whether the motion judge improperly went beyond the pleadings when she granted Rossi's motion to dismiss. Barrett, Papetti and U.S. Financial claim the judge relied on the contention that Finderne sought Rossi's advice after it received notice from the IRS; this information was not directly included in the pleadings. We do not find this reference warrants a reversal. Here, in their third-party complaint, Papetti and U.S. Financial allege, with respect to Rossi, that he was "negligent in putting together the opinions and ... negligently advised plaintiffs to let their policies lapse, not appeal and enter into a settlement [with the IRS] detrimental to plaintiffs and deviated from the standard of care expected to be used by accountants." Implicit in this allegation is that Finderne sought Rossi's advice concerning the notice received from the IRS. We find nothing improper about the judge's use of this information to arrive at her decision.

IV
Next we turn to the appellants' primary contentionthat Rossi is not immune under N.J.S.A. 2A:53A-25b. The statute provides immunity for negligence arising out of and in the course of rendering professional accounting services unless:
(1) The claimant against the accountant was the accountant's client; or
(2) The accountant:
(a) knew at the time of the engagement by the client, or agreed with the client after the time of engagement, that the professional accounting service rendered to the client would be made available to the claimant, who was specifically identified to the accountant in connection with a specified transaction made by the claimant;
(b) knew that the claimant intended to rely upon the professional accounting service in connection with that specified transaction; and
(c) directly expressed to the claimant, by words or conduct, the accountant's understanding of the claimant's intended reliance on the professional accounting service[.]
[N.J.S.A. 2A:53A-25b.]
The statute's legislative history indicates that it was enacted to "limit accountants' liability to third parties for the accountants' negligent acts. The bill restores the concept of privity to accountants' liability towards third parties ...," Senate Commerce Committee Statement to Senate Bill No. 826 (Oct. 13, 1994), which was "weakened" by the Supreme Court's decision in Rosenblum, Inc. v. Adler, 93 N.J. 324, 336-37, 461 A.2d 138 (1983). Rosenblum held that an accountant who prepared an audit was responsible for negligence to those persons whom the accountant should reasonably have foreseen would receive and rely upon the audit. Ibid. After Rosenblum, the legislature was concerned about lawsuits against accountants by virtually "any member of the investing public at large" and about "deep pocket" actions against accountants because of an accountant's failure to detect the fraud of his or her client. Sponsor's Statement to Senate Bill No. 826 (March 10, 1994).
Although the motion judge relied on the statute as a basis to dismiss the complaint, we need not reach whether Rossi has immunity under the statute because we find Rossi had no duty to *863 Barrett, Papetti or U.S. Financial with respect to the advice Rossi provided to Finderne. The determination of the existence of a duty is a question of law for the court. Petrillo v. Bachenberg, 139 N.J. 472, 479, 655 A.2d 1354 (1995) (citations omitted). The question of whether a duty exists implicates many factors, including the foreseeability of harm, fairness and public policy. Carvalho v. Toll Bros. and Developers, 143 N.J. 565, 572-73, 675 A.2d 209 (1996). Courts have traditionally held that imposing liability on accountants requires a privity or privity-like relationship between the claimant and the negligent actor. Rosenblum, supra, 93 N.J. at 333, 461 A.2d 138 (citing Ultramares v. Touche, 255 N.Y. 170, 174 N.E. 441 (1931)). See also St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co., 244 Neb. 408, 507 N.W.2d 275, 280 (1993) (noting that in general an accountant's liability to third persons is determined by balancing various factors, including extent to which transaction was intended to affect third party, the foreseeability of harm to third party, the closeness of the connection between accountant's conduct and the injury suffered, the moral blame attached to accountant's conduct and the policy of preventing future harm).
We are not persuaded that Rossi owed a duty to Barrett. Generally, to recover for an economic loss resulting from negligence by one furnishing a service, a "direct contractual relationship between the parties" must exist or the injured party must be a known "beneficiary of the defendant's undertaking." Rosenblum, supra, 93 N.J. at 334-35, 461 A.2d 138. Although the Rosenblum Court determined that privity was not necessary when an accountant prepared an audit, the Court emphasized that the duty only extended to "those foreseeable users who received the audited statements from the business entity for a proper business purpose to influence a business decision of the user, the audit having been made for that business entity." Id. at 352, 461 A.2d 138.
Here, the alleged negligence does not apply to an accountant's auditing function. Rossi is accused of giving Finderne negligent advice concerning the EPIC Plan and the insurance policies that funded the Plan. This type of advice is substantively different from an accountant's audit opinion which is recognized as being "made for the use of third parties who have no contractual relationship with the auditor ... [I]t is common knowledge that companies use audits for many proper business purposes, such as submission to banks and other lending institutions that might advance funds and to suppliers of services and goods that might advance credit." Id. at 345, 461 A.2d 138. There is no evidence in this case to demonstrate that Rossi knew, or should have known, that Barrett, Papetti or U.S. Financial would rely on Rossi's advice to Finderne, and in fact neither Barrett, Papetti nor U.S. Financial has made such a claim. See Selden v. Burnett, 754 P.2d 256 (Ak.1988) (finding that when an accountant in the course of giving personal tax advice verbally recommends particular investment to client, accountant owes duty of care to third party only if accountant specifically intends third party to invest relying on his advice and only if accountant makes intent known).
Simply stated, the reasons that underlie the Rosenblum Court's decision to eliminate the need for privity in the context of an accountant's audit functions do not apply here. Rossi advised his clients, Finderne and its principals, of the consequences of terminating their participation in the company employee benefit plan. This is not the type of information a third party would foreseeably rely on to lend money, render services, or invest in the *864 business. In sum, the type of information Rossi supplied to his clients is qualitatively different from the information an accountant provides when engaging in an audit function.
Nor does public policy warrant the elimination of privity in the context of this case. Public policy may be derived from a number of sources, including state statutes. See Mehlman v. Mobil Oil Corp., 153 N.J. 163, 188, 707 A.2d 1000 (1998). Here, even though we do not address whether Rossi is shielded by the immunity proscribed by N.J.S.A. 2A:53-25b, by enactment of this law the Legislature has expressed a policy that, subject to the limitations in the legislation, an accountant should not be responsible to third parties for negligent acts arising out of the services the accountant has provided to his or her client. According to the statute's legislative history, its intent was to limit an accountant's liability to third parties and restore privity for the accountant's negligent acts.
Neither Barrett, Papetti nor U.S. Financial had a contractual relationship with Rossi. Therefore, without the existence of a duty, Barrett, Papetti and U.S. Financial do not have an actionable claim against Rossi. See Endre v. Arnold, 300 N.J.Super. 136, 142, 692 A.2d 97 (App.Div.1997) (citations omitted) (stating that three elements are necessary to constitute a cause of action for negligence: "a duty of care owed by defendant to plaintiff; ... a breach of that duty by defendant; ... and an injury to plaintiff proximately caused by defendant's breach.") Hence, the first element has not been established.
Nor is Barrett entitled to contribution from Rossi as a joint tortfeasor. Under New Jersey's Joint Tortfeasor's Contribution Act, the term "joint tortfeasors" means "two or more persons jointly or severally liable in tort for the same injury to person or property." N.J.S.A. 2A:53A-1. Thus, while there may be contribution for joint liability even though the wrongs may not be common or concurrent, Neveroski v. Blair, 141 N.J.Super. 365, 385, 358 A.2d 473 (App.Div.1976), the statute makes clear that liability must be made for the "same injury." Where the pleadings show separate torts, severable as to time and breaching different duties, rather than a joint tort, dismissal of the third-party action is appropriate. Tesch v. United States, 546 F.Supp. 526, 530 (E.D.Pa.1982).
In this instance, the wrongs alleged do not relate to the same injury. Plaintiffs' action against Barrett, Papetti and U.S. Financial relates to alleged misrepresentations that induced Finderne to participate in the EPIC Plan. Any action the Finderne plaintiffs would bring against Rossi[3] would be based on accountant malpractice. See Vesely, Otto, Miller & Keefe v. Blake, 311 N.W.2d 3, 4-5 (Minn. 1981) (lawyer found liable for negligent advice to client which resulted in client's failure to sue physician for medical malpractice before expiration of statute of limitations could not recover contribution or indemnification against physician; torts separate and distinct and committed at different times); Lawlor, supra, 101 N.J.Super. at 142, 243 A.2d 293 (where plaintiff had separate and distinct causes of action against cemetery for negligent maintenance, and against doctor and hospital for malpractice, wrongs were independent and successive rather than joint and third-party action by cemetery against doctor and hospital could not be maintained).
Barrett, Papetti and U.S. Financial maintain that Rossi's advice aggravated *865 any losses already suffered by plaintiffs and formed a single economic loss based on Finderne's participation in the Plan. In support, they rely on Ronson v. David S. Talesnick, CPA, 33 F.Supp.2d 347, 351, 357 (D.N.J.1999), where the plaintiffs sought recovery from an accounting firm for interest the IRS determined the plaintiffs owed. The court held that the accounting firm "may" have a contribution claim against the former accountant who left the firm to become plaintiff's accountant because of the accountant's "knowledge, former relationship with the accounting firm and obligation to" the plaintiffs as their accountant. Id. at 357. In this case, no similar close relationship between Rossi and Barrett or the third-party plaintiffs exists, either as to employment or as to the underlying claim.
Finally, appellants rely on Pennine Res., Inc. v. Dorwart Andrew & Co., 639 F.Supp. 1071, 1073 (E.D.Pa.1986), where the court refused to dismiss a third-party complaint by an accounting firm against another accounting firm. The firm alleged that the third-party defendant also performed accounting work for the plaintiff and should have been aware of any financial errors. Id. at 1073. The court found that although the two accounting firms acted independently, they may have breached "a common duty" and together caused the plaintiff an indivisible injury. Id. at 1075. The alleged acts were close in time and similar evidence might support an action against both accounting firms; and each firm may have had the opportunity to guard against the other's negligence. Ibid. None of these factors relied on by the court to support its decision not to dismiss are present in this case.
Affirmed.
NOTES
[1] The complaint instituted by the Finderne plaintiffs was filed in Somerset County, and the complaint instituted by the Alloy Cast plaintiffs was filed in Union County. Rossi was not a named party in the Alloy Cast case.
[2] In a separate opinion rendered this date we have reversed the Law Division which had dismissed these claims on the grounds that the claims were prohibited under 29 U.S.C.A. § 1144(a), the preemption provision of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. §§ 1001 to -1461. See Finderne Management Company, Inc. v. Barrett, 355 N.J.Super. 170, 809 A.2d 842 (App.Div.2002) (Finderne I).
[3] Rossi is not a direct defendant in this law suit.