

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-14-2007

# Kollman v. Hewitt Assoc

Precedential or Non-Precedential: Precedential

Docket No. 05-5018

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Kollman v. Hewitt Assoc" (2007). *2007 Decisions.* Paper 1032.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1032

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-5018

———

GERALD E. KOLLMAN

v.

HEWITT ASSOCIATES, LLC; ROHM AND HAAS
COMPANY; ROHM AND HAAS BENEFITS
ADMINISTRATIVE COMMITTEE

Rohm and Haas Company;
Rohm and Haas Benefits Administrative Committee,
Appellants

———

No. 05-5207

———

GERALD E. KOLLMAN,
Appellant

v.

HEWITT ASSOCIATES, LLC; ROHM AND HAAS
COMPANY; ROHM AND HAAS BENEFITS
ADMINISTRATIVE COMMITTEE

———

No. 06-1558

———

GERALD E. KOLLMAN

v.

HEWITT ASSOCIATES, LLC; ROHM AND HAAS

COMPANY; ROHM AND HAAS BENEFITS
ADMINISTRATIVE COMMITTEE,

Appellants

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 03-cv-02944)
District Judge: Honorable Michael M. Baylson

Argued January 8, 2007

Before: SLOVITER and RENDELL, Circuit Judges,
and IRENAS, District Judge[*]

(Filed: May 14, 2007)

Raymond A. Kresge (Argued)
Cozen O'Connor
Philadelphia, PA 19103-3508

Attorney for Appellants/Cross-Appellees

Kevan F. Hirsch (Argued)
Daniel R. Utain
Kaplan, Stewart, Meloff, Reiter & Stein
Blue Bell, PA 19422

Attorneys for Appellee/Cross-Appellant

OPINION OF THE COURT

SLOVITER, Circuit Judge.

---

[*] Hon. Joseph E. Irenas, Senior Judge, United States District
Court for the District of New Jersey, sitting by designation.

# I.

## Summary

Gerald Kollman, who was an employee of Rohm and Haas Company at the time at issue, sought to ascertain the amount of lump sum pension to which he would be entitled if he were to retire. He accessed the computer website prepared and maintained for that purpose by Hewitt Associates, LLC and received an incorrect figure. That figure, $522,043.30, had not been reduced by the amount of the Qualified Domestic Relations Order ("QDRO") that was owing to Kollman's former wife. Kollman was notified of the correct pension amount some two months later. In the interim, he had signed the retirement papers. He concedes he is not entitled to the difference from Rohm and Haas. Instead, he makes two claims: a claim against Rohm and Haas that it violated the Employee Retirement Income Security Act of 1974 ("ERISA") by failing to provide him with a copy of the company's Plan and Summary Plan Description ("SPD") within thirty days of his letter requesting certain documents, and a claim against Hewitt for professional malpractice because of the failure of the website to provide the correct pension amount. Kollman prevailed on the first claim, and Rohm and Haas appeals. Hewitt prevailed on the second claim, and Kollman cross appeals.[1]

# II.

## Facts and Procedural Posture

Kollman was employed by Rohm and Haas as a Field Research and Development Manager in Rohm and Haas' AgroFresh unit in Springhouse, Pa., and was a beneficiary of the Rohm and Haas Company Retirement Plan (the "Plan"). Rohm and Haas outsourced most of the administrative services associated with the Plan to Hewitt which undertook to perform the day-to-day Plan administration. In his second amended

---

[1]We have appellate jurisdiction to review the District Court's orders pursuant to 28 U.S.C. § 1291.

complaint, Kollman referred to Hewitt as the agent for Rohm and Haas.

One of Hewitt's functions was the calculation of proper retirement benefits. Hewitt created and maintained a website that allowed Rohm and Haas employees to go on-line and access information providing them with estimates of their retirement benefits. The website is not part of the Plan, but a distinct and separate service that Hewitt provides for Rohm and Haas and Plan beneficiaries.

Rohm and Haas announced a Severance Benefit Package ("SBP") for employees who voluntarily retired by December 31, 2002. On October 31, 2002, Kollman logged on to the website maintained by Hewitt to obtain a statement of his pension benefits calculation. Kollman was aware that a portion of his pension was earmarked for his former wife but, as noted above, the website's calculation that he would receive a lump sum of $522,043.30 if he decided to accept the SBP failed to account for Kollman's obligations under the QDRO. The calculation provided by the website made it seem as though the lump sum figure had already been adjusted for the QDRO.

Kollman verified the calculation on the website and by telephone, and alleges that he elected to retire on December 31, 2002 based on those representations.[2] It was not until January 6, 2003 that he was advised that he was entitled to a pension of $419,917.72, the original amount of $522,043.30 reduced by the QDRO offset of $102,125.28. The correct amount was confirmed by a Pension Benefit Statement that Kollman received on January 7, 2003. Kollman's subsequent efforts to appeal through the internal administrative mechanism were unsuccessful[3] and he does not seek any relief here from that

[2] It is unclear that Kollman voluntarily retired. There is some evidence that his employment was severed in connection with a reorganization. We need not resolve that issue.

[3] On February 13, 2003, Kollman filed an "R&H Company Health and Group Benefits Claim Initiation Form," which had been

4

decision.

Shortly after Kollman initiated his internal appeal, <u>see</u> footnote 3, his counsel sent a letter dated February 18, 2003 to Hewitt requesting that Hewitt produce the following:

1.   All tape recordings of telephone calls between Kollman and Hewitt from December 1, 2002 through the present;

2.   All available printouts of or electronically stored data on benefits projections for Kollman from October 1, 2002 through the present;

3.   All documents of any nature which relate, reflect or refer the QDRO adjustment to Kollman's benefits wherever such documents were generated, created or stored;

4.   All pension benefits paperwork generated by Hewitt for Kollman in December of 2002 and January 2003, including any drafts thereof;

5.   All internal communications and documents, including electronic mail, which relate, reflect or refer to Kollman or his benefits which have been generated by Hewitt from December 1, 2003[4] through the present; and

6.   All communications between Hewitt and Rohm & Haas which relate, refer or reflect to Kollman of his benefits.

App. at 804-05.

On March 20, 2003, Hewitt responded to Kollman's attorney's February 18, 2003 request for documents, stating that

_____

mailed to him by Hewitt to appeal the reduction of his retirement benefits.  On March 5, 2003, Rohm and Haas denied Kollman's appeal because the Plan required proper application of the QDRO and the Plan rules did not permit payment of any additional funds.

[4] It appears that the reference to December 1, 2003 was a typographical error, and the intended date was December 1, 2002.

it performed certain administrative services for Rohm and Haas regarding their defined benefits plan, but that "Hewitt is not the Plan Administrator." App. at 810. The letter further stated that "[w]ith respect to Mr. Kollman's request for documents, under Section 2560.503-1 of the Department of Labor Regulations on Claim Procedure, request for documentation should be addressed to the Plan Administrator." Id. Thereupon, by letter dated April 28, 2003, Kollman's counsel requested from the plan administrator, Rohm and Haas Benefits Administrative Committee ("BAC"), "all documents, records, and other information relevant to [Kollman's] claim for benefits," including the same information requested in the February 18, 2003 letter. App. at 812. However, it was not until June 26, 2003 that outside counsel for defendants produced the Plan, the updated SPD and the "administrative record" for Kollman's claim that included the severance agreement that Kollman signed in December 2002. See Kollman v. Hewitt Assocs., No. Civ. A. 03-2944, 2005 WL 2746659, at *4 (E.D. Pa. Oct. 18, 2005).

Kollman initially filed this action against Hewitt under state law, claiming damages for negligent misrepresentation, negligence, promissory estoppel and breach of contract. The District Court, by order dated September 23, 2003, dismissed the complaint as preempted under ERISA, but gave Kollman leave to file an amended complaint raising a claim under ERISA. Kollman v. Hewitt Assocs., No. Civ. A. 03-2944, 2003 WL 22331870, at *1 (E.D. Pa. Sept. 22, 2003). Kollman amended the complaint to state three counts. The amended complaint now included a claim, Count I, against Rohm and Haas under ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), that quoted from federal regulations relating to ERISA claims procedure; Count II asserted a state law claim against Hewitt for professional malpractice; Count III asserted an ERISA equitable estoppel claim against Hewitt. The District Court dismissed Count II, the claim against Hewitt for professional malpractice, by order entered April 14, 2004 on the ground of ERISA preemption. That order is the subject of Kollman's counterclaim.

Kollman filed a second amended complaint against Rohm and Haas asserting a claim for breach of its fiduciary duty that the District Court construed as arising under ERISA §

6

404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), inter alia, for failure to produce "relevant" documents as required by ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1). App. at 218. Following discovery, defendants' motions to dismiss and motions for summary judgment, the District Court, by order dated August 11, 2005, dismissed Kollman's equitable estoppel claim and held that there were genuine issues of material fact with respect to Kollman's claim for damages under § 502(c)(1) of ERISA, 29 U.S.C. § 1132(c)(1), based on failure to provide documents required by the Plan. On August 24, 2005, the Court held a short non-jury trial and found that Rohm and Haas was liable for statutory penalties of $9,800 under § 502(c)(1) for violation of § 104(b)(4) of ERISA. Rohm and Haas appeals from that order.

## III.

### Statutory Penalty Under Section 502(c)(1) of ERISA, 29 U.S.C. § 1132(c)(1)

Section 502(c)(1) of ERISA imposes a statutory penalty of up to $100 a day on any plan administrator who fails to provide to a plan participant or beneficiary any information that is required by the subchapter of the statute. That provision states:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day . . . .

29 U.S.C. § 1132(c)(1).

The relevant subchapter provisions referred to in § 502(c)(1) are ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), and ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D). Under §

7

104(b)(4) of ERISA,

> The administrator shall, upon written request of
> any participant or beneficiary, furnish a copy of
> the latest updated summary plan description[,] and
> the latest annual report, any terminal report,
> bargaining agreement, trust agreement, contract, or
> other instruments under which the plan was
> established or operated.

29 U.S.C. § 1024(b)(4).  There can be no question that the statute requires the administrator to furnish the SPD upon request.

The second provision referenced in § 502(c)(1) is § 404(a)(1)(D) of ERISA which states:

> Fiduciary Duties
>   (a) Prudent man standard of care.
>     (1) Subject to sections 1103(c) and (d), 1342,
>     and 1344 of this title, a fiduciary shall discharge
>     his duties with respect to a plan solely in the
>     interest of the participants and beneficiaries
>     and –
>     (D) in accordance with the documents and
>     instruments governing the plan insofar as such
>     documents and instruments are consistent with
>     the provisions of this subchapter and subchapter
>     III of this chapter.

29 U.S.C. § 1104(a)(1)(D).  The District Court imposed sanctions on Rohm and Haas under § 104(b)(4) of ERISA but rejected the imposition of sanctions based on § 404(a)(1)(D) of ERISA.  Rohm and Haas' appeal of the sanctions order is the subject of this appeal.

In Groves v. Modified Ret. Plan, 803 F.2d 109 (3d Cir. 1986), the plaintiff, a plan participant who was denied disability benefits, sued the plan administrator under ERISA § 502(c)(1) for failure to give reasons for the denial of his retirement disability claim.  Id. at 112.  We held that Groves was entitled to

8

receive the medical information underlying the decision to deny him benefits pursuant to § 503 of ERISA, 29 U.S.C. § 1133. However, because § 503 only requires release of the information by the plan and does not refer to the plan administrator, we held that sanctions under § 502 were unavailable for that violation.

Groves also sought sanctions for failure to provide the information as required by 29 C.F.R. § 2560.503-(1)(f). As to that claim, we stated that "because § 502(c) authorizes penalties only for breach of duties imposed by 'this subchapter,' such sanctions cannot be imposed for violation of an agency regulation." Id. at 118. Further, we stated that "[b]ecause § 502(c) is a penal statute, our holdings regarding the scope of that provision are also impelled by the rule of lenity in the construction of penal provisions." Id. (citing Huddleston v. United States, 415 U.S. 814 (1974)). Therefore, we concluded that "[b]ecause Congress has not plainly and unmistakably established that § 502(c) penalties should be applied to violations of the kind here at issue, we decline to interpret the penalty provision to embrace such violations." Id. at 118.

The District Court correctly opined that we must evaluate Kollman's ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), and ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), claims in light of Groves. This means that the rule of lenity, which we applied to the facts in Groves, applies with equal weight here.

By its express language, § 104(b)(4) requires the plan administrator to furnish a copy of the SPD and other instruments under which the plan was established "upon written request of any participant or beneficiary." To establish a violation under that section, Kollman must establish that he made a written request to the plan administrator (here, the BAC) and that the administrator failed to respond within thirty days. A review of the language of the letter of February 18, 2003 shows that neither the Plan nor the SPD was listed among the six categories of documents requested. The relevant question in this case is whether Kollman made a written request for the documents as required by the statute.

As the District Court noted, this court has yet to decide

9

whether a written request must specifically name the precise documents being sought. Kollman, 2005 WL 2746659, at \*6. Other courts to have considered the issue have adopted a clear notice test. See, e.g., Faircloth v. Lundy Packing Co., 91 F.3d 648, 655 (4th Cir. 1996) (holding that "[a]ppellants' request did not give any indication of the information sought by the [a]ppellants. Their request for 'any' meeting minutes 'regarding' [the employee stock ownership plan] in the last three years was akin to asking Lundy to comb the past three years of trustees' meeting minutes to determine if they contained any information that could possibly be encompassed by § 104(b)(4)."). In addition, the United States Courts of Appeals for the Second, Fifth, Seventh, and Tenth Circuits have held that plaintiffs seeking documents under 29 U.S.C. § 1024(b)(4) must provide clear notice to the plan administrator of the information they desire. See Davenport v. Harry N. Abrams, Inc., 249 F.3d 130, 135 (2d Cir. 2001) (civil penalties denied because plaintiff conceded she never asked for the SPD by name, but sought only specific information for type and amount of any vested benefits she had accrued); Fisher v. Metro. Life Ins. Co., 895 F.2d 1073, 1077 (5th Cir. 1990) (civil penalties denied because plaintiff's request was for copy of policies covering his contract for salary continuation, not Plan documentation); Anderson v. Flexel, Inc., 47 F.3d 243 (7th Cir. 1995); Moothart v. Bell, 21 F.3d 1499 (10th Cir. 1994); see also Williams v. Caterpillar, Inc., 944 F.2d 658, 667 (9th Cir. 1991) (holding that the district court did not abuse its discretion in finding that appellants "failed to offer any proof – or even to allege – that they had ever requested any plan descriptions from appellees").

Both Kollman and the BAC agree that the clear notice test applies. Further, it is undisputed that Kollman's February 18, 2003 letter did not specifically mention the Rohm and Haas retirement plan or SPD. The parties dispute both the applicable standard of review on appeal and whether the clear notice test requires that the party seeking information ask for the specific documents by name. Kollman argues that we should review the District Court's finding under the clearly erroneous standard, because in his view the District Court made a finding of fact that the February 18, 2003 request was sufficiently clear. On the other hand, Rohm and Haas argues that we should exercise

10

plenary review because the District Court improperly interpreted the legal question of what constitutes clear notice.

We are persuaded by Kollman's argument that we should review the District Court's finding as one of fact under the clearly erroneous standard. That is the approach taken in Anderson, 47 F.3d at 248 ("Whether a request is proper under [§ 1024] is a mixed question of law and fact. When such questions present a fact specific application of the law, such as here, we review the district court's decision under a clearly erroneous standard."), and Boone v. Leavenworth Anesthesia, Inc., 20 F.3d 1108, 1111 (10th Cir. 1994) ("[W]e hold that it was not clearly erroneous for the district court to determine the letter constituted a sufficient written request pursuant to § 1025(a)."). Because we agree that a clear notice test applies, and because the District Court applied such a test, the only question is whether the Court's finding that Kollman's February 18, 2003 letter was sufficiently specific was clearly erroneous.

The courts applying the clear notice test have divided as to whether the request made by or on behalf of the plan participant gave clear notice of the documents. Each decision depended upon the circumstances of that case and no general rule can be formulated. We should look to whether "either the request or the response indicates that [defendant] knew or should have known that [plaintiff] had requested a copy of any document relating to the . . . [p]lan." Fisher, 895 F.2d at 1077. A similar approach was taken in Anderson, 477 F.3d at 250, where the court upheld the imposition of civil penalties following a finding that the company "knew or should have known which documents were being requested[.]" See also Moothart, 21 F.3d at 1503 (civil penalties appropriate when request specified "a copy of that Summary Plan Description").

The District Court found that Kollman's "request was sufficiently specific, asking for all documents relating to the application of his QDRO, considering the background of communications between [Kollman] and Defendants. . . . Defendants knew or should have known, based on their knowledge of the surrounding circumstances or the nature of the information being sought, that [Kollman] was, at the very least,

11

requesting copies of these documents." 2005 WL 2746659 at *7. Although the District Court enunciated the correct standard, we find no basis in the record to support its conclusion. The February 18, 2003 letter made no mention of the Plan or the SPD. The letter also did not cite ERISA. Although the letter asked for "[a]ll documents of any nature which relate, reflect or refer the QDRO adjustment to Mr. Kollman's benefits whenever such documents were generated, created or stored[,]" App. at 804, that request cannot be interpreted as a request for the Plan or the SPD. Neither the Plan nor the SPD spoke to the calculations of Kollman's personal QDRO adjustment. Moreover, neither document contains any information relating to the mistaken estimate of the QDRO nor any information as to how the mistaken calculation was corrected. Finally, the fact that Kollman's attorney initially sent the February 18, 2003 letter to Hewitt, rather than to the BAC, is indicative of the type of information Kollman was seeking – documents relating to the calculation, or miscalculation, of his QDRO. Therefore, we hold that the District Court's finding that Kollman's request was sufficiently specific under the clear notice test was clearly erroneous.

We do not hold that a future request for documents is per se inadequate because it fails to specifically name the documents sought. Rather, the touchstone is whether the request provides the necessary clear notice to a reasonable plan administrator of the documents which, given the context of the request, should be provided. In this case, the prior communications signaled only Kollman's interest in the calculation of his own benefits. Neither the Plan nor the SPD, when produced, provided any information along the line of Kollman's interest. It follows that Kollman's letter does not pass the clear notice test.

The only other basis for Kollman's claim under § 502(c)(1), 29 U.S.C. § 1132(c)(1), was the alleged violations of § 404(a)(1)(D) of ERISA, 29 U.S.C. § 1104(a)(1)(D). That section requires the plan administrator to "discharge his duties with respect to a plan . . . in accordance with the documents and instruments governing the plan . . . ." Kollman argues that because the Plan states that a claimant is entitled to copies "of all documents, records and other information relevant to the claim,"

12

App. at 397, the failure to produce the Plan and the SPD violated Rohm and Haas's fiduciary duty under § 404(a)(1)(D) of ERISA, thereby incurring the penalty assessed under § 502(c)(1) of ERISA, 29 U.S.C. § 1132(c)(1).  The District Court was not persuaded.  The Court applied our holding in <u>Groves</u> mandating that § 502(c)(1) should be narrowly construed.  It found that the link between § 404(a)(1)(D) and § 502(c)(1) was too attenuated because § 502(c)(1) applies to failures under ERISA and not to those under the Plan.  <u>See</u> 29 U.S.C. § 1132(c)(1) ("Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this *subchapter* to furnish to a participant or beneficiary . . . may . . . be personally liable . . . .") (emphasis added).

We agree.  As we noted above, in <u>Groves</u> we held that the defendants' failure to provide information required by federal regulations did not state a claim under ERISA § 502(c)(1).  We stated, "the words 'this subchapter' in § 502(c) refer only to violations of statutorily imposed obligations, and that the term does not embrace violations of regulations promulgated pursuant to the statute."  <u>Groves</u>, 803 F.2d at 111.  We went on to state that liability under § 502(c) "can be imposed on plan administrators only if they fail to fulfill an obligation [that] ERISA imposes directly upon them," <u>id.</u> at 113, and that "§ 502(c) subjects plan administrators to liability only for failure or refusal to release the information that Subchapter 1 of ERISA specifically requires plan administrators to release."  <u>Id.</u> at 116.

Kollman's theory fails because the connection between § 404(a)(1)(D) and § 502(c)(1) is too tenuous.  Section 404(a)(1)(D) does not contain language that directly imposes information obligations on plan administrators.  It is addressed only to fiduciaries.  Therefore, that section cannot be used as the basis for a penalty under § 502(c)(1) of ERISA.  In addition, § 502(c)(1) states that a penalty is only permitted for failure to provide information required by "this subchapter," and Kollman's claim is based on the Plan's mandate to provide information, rather than ERISA's.

We will therefore reverse the District Court's judgment holding that Rohm and Haas was liable for the statutory

13

penalties imposed under ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1). It follows that the grant of attorneys' fees to Kollman will also be reversed.

## IV.

## <u>Professional Malpractice Claim</u>

In his appeal, Kollman argues that the District Court erred in holding that his professional malpractice claim against Hewitt was preempted by ERISA. Section 514(a) of ERISA provides: "Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). In <u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41 (1987), the Supreme Court gave § 514(a) a broad reading, stating: "[T]he phrase 'relate to' [is] given its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan." <u>Id.</u> at 47 (quoting <u>Metro. Life Ins. Co. v. Mass.</u>, 471 U.S. 724, 739 (1985) (internal quotation marks omitted)).

It is no secret to judges and lawyers that the courts have struggled with the scope of ERISA preemption. Kollman argues that the Supreme Court narrowed the scope of § 514(a) in its decision in <u>N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.</u>, 514 U.S. 645 (1995). In <u>Travelers</u>, the Court reversed the decision of the Second Circuit that had held that a New York statute that required hospitals to collect surcharges from patients depending on the type of insurance they carried was preempted by ERISA. In holding there was no preemption, the Supreme Court noted that the purpose of § 514(a) was to "'eliminat[e] the threat of conflicting and inconsistent State and local regulation.'" <u>Id.</u> at 657 (quoting 120 Cong. Rec. 29192, 29197 (1974) (statement of Rep. Dent)). In the <u>Travelers</u> decision, the Court did not establish a generally applicable rule that could be used to determine preemption in different fact situations. Therefore, we must make the preemption decision in light of the purpose underlying § 514(a)

14

and, of course, the applicable precedents from opinions of the Supreme Court and this court.

We derive some insight from the Supreme Court's decision in Ingersoll-Rand Co. v. McClendon, 498 U.S. 133 (1990), because the issue in that case was preemption of a state tort claim, as in this case. The Court determined that a judicially created cause of action similar to a claim for wrongful discharge was preempted. Plaintiff, a former employee, filed suit against his former employer alleging termination by his employer to avoid contributing to the ERISA pension plan. In holding the cause of action preempted, the Court characterized ERISA § 514(a) as "ERISA's broad pre-emption provision," and cited as well ERISA § 510, 29 U.S.C. § 1140, "which proscribes interference with rights protected by ERISA; and [ERISA] § 502(a), 29 U.S.C. § 1132(a), a 'carefully integrated' civil enforcement scheme that 'is one of the essential tools for accomplishing the stated purposes of ERISA.'" Id. at 137 (quoting Pilot Life, 481 U.S. at 41, 52, 54).

The Court in Ingersoll-Rand stated that the preemption question requires a determination of congressional intent, "the ultimate touchstone." Id. at 138 (internal quotation marks and citation omitted). The Court noted that Congress had underscored its intent that § 514(a) be expansively applied by using "equally broad language in defining the 'State law' that would be pre-empted. Such laws include 'all laws, decisions, rules, regulations, or other State action having the effect of law.'" Id. at 138-39 (quoting ERISA § 514(c)(1)). The Court concluded that the unlawful discharge claim that the plaintiff had filed was preempted because "[a]llowing state based actions like the one at issue here would subject plans and plan sponsors to burdens not unlike those that Congress sought to foreclose through § 514(a)." Id. at 142. Of particular interest is the Court's comment that "state courts, exercising their common law powers, might develop different substantive standards applicable to the same employer conduct, requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction." Id. That outcome, the Court stated, "is fundamentally at odds with the goal of uniformity that Congress sought to implement." Id.

15

Although the Court in Ingersoll-Rand was addressing the concern of employers and ERISA plan managers, the same consideration is equally applicable to agents of employers, such as Hewitt, who undertake and perform administrative duties for and on behalf of ERISA plans. To subject such companies to the differing state court interpretations of the tort of professional malpractice would create obstacles to the uniformity of plan administration that was and is one of ERISA's goals.

Kollman relies on this court's decision in Painters of Phila. Dist. Council No. 21 Welfare Fund v. Price Waterhouse, 879 F.2d 1146 (3d Cir. 1989), for his argument that his claim of professional malpractice against Hewitt is not subject to preemption because Hewitt is supposedly a nonfiduciary. Notwithstanding some dictum on which Kollman relies, the situations are much different. Painters involved a suit by a plan's trustees against the plan's accountant/auditor for failure to uncover the fraudulent activity in which the fund's administrator had engaged. It is not surprising that we held that ERISA preemption does not generally preempt professional malpractice actions "brought by a plan," id. at 1153 n.7, as such actions are unlikely to interfere with plan administration.[5] Congress was concerned with subjecting plans to burdens, and said nothing about actions by plans. As noted above, the ERISA preemption provision was designed to "eliminat[e] the threat of conflicting or inconsistent State and local regulation of employee benefit plans." 120 Cong. Rec. 29928, 29933 (1974) (statement of Sen. Williams); see also Pilot Life, 481 U.S. at 46 (quoting same).

Indeed, in a number of other cases, courts of appeals have held that state law malpractice claims brought by or on behalf of ERISA plans were not preempted. See Gerosa v. Savasta & Co., Inc., 329 F.3d 317, 330 (2d Cir. 2003) (a malpractice claim brought by plan trustees against a plan actuary not preempted); Custer v. Sweeney, 89 F.3d 1156, 1167 (4th Cir. 1996) (trustee's

---

[5] Nor did the dictum suggest that professional malpractice suits would never be preemptive. The Court stated that "ERISA does not generally preempt state professional malpractice actions," id. at 1153 n.7 (emphasis added).

state law legal malpractice claim against an ERISA plan's attorney not subject to ERISA preemption); Airparts Co., Inc. v. Custom Benefit Servs. of Austin, 28 F.3d 1062, 1064 (10th Cir. 1994) (ERISA did not preempt state law claims brought by trustees of an ERISA plan against a non-fiduciary firm "hired by plaintiffs to provide expert benefit plan consultation").  The Fourth Circuit, in holding that a malpractice claim by the trustee is not preempted, noted that the defendant, the attorney sued by the ERISA trustee, "has not cited a single decision holding that ERISA preempts a malpractice or professional negligence claim against a service provider to an ERISA plan."  Sweeney, 89 F.3d at 1167.  Kollman cites these decisions in support of his effort to overturn the District Court's decision dismissing his malpractice action against Hewitt, an ERISA plan agent, as preempted.  The argument is unpersuasive.  There is no reason why ERISA's preemptive scope would reach state law malpractice claims filed by ERISA plans or trustees because such claims do not undermine the congressional policies that underlie ERISA.

Preemption under § 514(a) covers "any and all State laws" that "relate to" an ERISA plan.  29 U.S.C. § 1144(a).  A claim that an attorney, accountant or other service provider was negligent does not "relate to" the plan although the negligent act, which provided the basis for the malpractice suit by the plan, may have adversely affected the plan.  As the trustee of a plan argued in Sweeney, "professional negligence and malpractice claims against third-party service providers to an ERISA plan do not implicate the essential functions of an employee benefit plan, such as funding, benefits, reporting, and administration . . . ."  Sweeney, 89 F.3d at 1165 (internal quotation marks omitted).

As always, the relevant question is how such suits should be viewed in light of the purpose of the ERISA preemption provision, § 514(a).  The analysis of the courts that have held such claims not preempted because they do not "relate to" an ERISA plan are consistent with this view.  A claim by the plan that an agent negligently acted in some way causing injury to the plan does not implicate the funding, benefits, reporting or administration of an ERISA plan.  Instead, the purpose of the ERISA preemption is to eliminate claims that would interfere with the ERISA plans.

An example of the type of action against an ERISA plan that is not preempted is provided by the decision in <u>Mackey v. Lanier Collection Agency & Serv., Inc.</u>, 486 U.S. 825 (1988) (holding that a state action garnishing funds due to participants in an ERISA employee welfare benefit plan not preempted). In <u>Mackey</u>, the Court made clear that the broad protection afforded by § 514(a) notwithstanding, general state enforcement mechanisms can be used to reach a participant's benefits. It is in this context that we must consider the frequently cited quotation from the <u>Mackey</u> opinion where the Court explained that ERISA does not preempt "run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan. . . ." <u>Id.</u> at 833. Thus, although some ordinary state law or common law claims may be asserted against an ERISA plan, such suits do not interfere with the essential role of an ERISA plan.

In contrast, the claim that Kollman asserts against Hewitt goes to the essence of the function of an ERISA plan – the calculation and payment of the benefit due to a plan participant. As the District Court recognized, "[i]n order to determine whether [the calculation] error constituted malpractice, [the] Court would necessarily need to consult the Plan to determine such issues as whether the calculation was in error, whether the Plan includes provisions regarding the representations of Lump Sum Payout amounts made on the Website or by [Hewitt's] customer service personnel, and whether the Plan includes provisions regarding representations of Lump Sum Payout amounts before claims for benefits are actually submitted." <u>Kollman v. Hewitt</u>, No. Civ. A. 03-2944, 2004 WL 1211961, at *3 (E.D. Pa. Apr. 14, 2004). Such claims are plainly preempted. <u>See, e.g.</u>, <u>Custer v. Pan Am. Life Ins. Co.</u>, 12 F.3d 410, 418 (4th Cir. 1993) (holding that plaintiff's claim for "past and future health care benefits" was preempted by ERISA).

The rationale for these holdings is that "[a]llowing beneficiaries to assert state law claims against non-fiduciary plan administrators . . . would upset the uniform regulation of plan benefits intended by Congress." <u>Howard v. Parisian, Inc.</u>, 807 F.2d 1560, 1565 (11th Cir. 1987). ERISA itself contains a civil enforcement scheme referred to in <u>Ingersoll-Rand</u> which

18

provides the mechanism for claims by beneficiaries or plan participants to question or challenge the provision or amount of benefits.  <u>See</u> 29 U.S.C. § 1132(a).  Any adjudication of Kollman's state law malpractice claim would necessarily require a court to consider the Plan in detail in order to properly address Kollman's arguments outside the mechanism prescribed by ERISA.  Such an outcome is precisely what Congress sought to avoid in developing a nationwide scheme for ERISA plans.  <u>See</u> 29 U.S.C. § 1144(a).  Thus, we will affirm the District Court's dismissal of Kollman's professional malpractice claim.

## V.

### <u>Conclusion</u>

For the reasons set forth above, the District Court's Order of October 18, 2005 is reversed.  The Court's April 14, 2004 order dismissing Kollman's professional malpractice claim is affirmed.