William FAULMAN; Michael Faulman; U.S. Investment Advisors, Inc., on behalf of themselves and others similarly situated, Appellants

v.

SECURITY MUTUAL FINANCIAL LIFE INSURANCE COMPANY.

No. 08–4152.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Nov. 17, 2009.

Filed: Dec. 3, 2009.

Kerri E. Chewning, Esq., Steven J. Fram, Esq., Mark J. Oberstaedt, Esq., Archer & Greiner, Haddonfield, NJ, for Appellants.

Robert E. Campbell, Esq., Christopher P. Leise, Esq., White & Williams, Cherry Hill, NJ, Mark J. Crandley, Esq., Bart A. Karwath, Esq., Howard E. Kochell, Esq., Barnes & Thornburg, Indianapolis, IN, for Security Mutual Financial Life Insurance Company.

Before: RENDELL, BARRY and CHAGARES, Circuit Judges.

OPINION OF THE COURT

RENDELL, Circuit Judge.

Plaintiffs William and Michael Faulman urge on appeal that the District Court

made a variety of errors in ruling on a motion for partial summary judgment and in its conduct of the bench and jury trials that occurred thereafter in this ERISA case. We disagree and will affirm the order of the District Court.

## Background

This case concerns an employer-purchased term life insurance policy called the Group Entry Age Reserve ("GEAR"), which was marketed by defendant Security Financial Life Insurance Company ("Security"). Upon termination or retirement, employees could convert the term coverage to a whole life insurance policy. After conversion, employees were charged a discounted premium, which was based on the employee's age when he was first issued the GEAR policy, rather than his age when he converted the term policy to the whole policy. According to Security, this feature was made possible by allocating part of the pre-conversion premium to a "Rate Stabilization Reserve." The funds in that reserve then offset the cost of premiums after conversion.

The Employer's Participating Insurance Cooperative ("EPIC") plan was a life insurance plan, which provided life insurance through the GEAR product. Initially, a company called Tri–Core, which was an affiliate of Security, administered the EPIC plan. After various changes, Security administered the successor to the EPIC plan that is relevant here.

Plaintiffs William Faulman and Michael Faulman were the only employees of U.S. Investment Advisors ("USIA"), a holding company created to manage several other corporations formed by the Faulmans. In 1992, the late Frank Speer, who was the Faulmans' insurance agent and an agent for Security, suggested that plaintiffs purchase EPIC and GEAR. Although the brochures about these products principally described them as life insurance products,

plaintiffs claim that Speer characterized them as an investment vehicle, much like a retirement plan, that would allow the Faulmans to contribute to the Rate Stabilization Reserve and, ultimately, cash out their contributions for a profit. Plaintiffs also claim that Speer stated that contributions to the GEAR product would be tax-free. After considering the products for two years, and having their attorney and accountant review them, plaintiffs purchased the EPIC and GEAR products in 1994. USIA joined the EPIC plan, the Faulmans submitted life insurance applications, and USIA made contributions of $420,000 to the plan over the next seven years.

In 2001, plaintiffs were informed that their premiums had increased. After subsequent inquiries, they were told (for the first time, according to them) that they could not cash out their contributions to the Rate Stabilization Reserve; rather, they could only use those contributions to defray the cost of converting the term life insurance policy to a whole policy, as described above. Plaintiffs ultimately converted their term policies to whole policies. William Faulman's premium for the whole policy was reduced by over 50% as a result of the GEAR conversion benefit.

Plaintiffs claim that Security misrepresented the nature of the Rate Stabilization Reserve and the tax-deductibility of their contributions in order to induce them to purchase the GEAR product. In particular, plaintiffs claim that Security was aware of an Internal Revenue Service ruling that the GEAR contributions were not tax-free, but that Security never notified plaintiffs of this fact. Plaintiffs also claim that Security improperly used plaintiffs' contributions to the plan to pay commissions to Tri–Core and to purchase the GEAR product.

Plaintiffs alleged that Security breached its fiduciary duties under ERISA, violated

the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68, violated Florida's Unfair Insurance Trade Practices Act, Fla. Stat. §§ 626.951–626.99, and committed common-law fraud, conversion, breach of contract, and breach of the duty of good faith and fair dealing. The District Court granted partial summary judgment to Security, finding that all of plaintiffs' state law claims except the fraud claim were preempted by ERISA. One year later, the District Court granted a second motion filed by Security for partial summary judgment, rejecting certain of plaintiffs' ERISA and RICO theories.

The case was then brought to trial. The RICO and fraud claims were tried to a jury, which found for defendant on both claims. The ERISA claims were tried to the Court, which also found for defendant. Specifically, the Court found that Security did not owe plaintiffs any fiduciary duties with respect to the disclosure of the plan's tax status or the payment of commissions to Tri–Core, and that Security did not breach its fiduciary duties when it purchased the GEAR product for the USIA plan.

Plaintiffs moved for a new jury trial. They argued that the Court had erred when it limited the length of plaintiffs' opening statements, interrupted their examination of a witness named David Wallman, excluded certain evidence, and instructed the jury. The Court denied the motion.

This appeal followed.

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

### The District Court's Summary Judgment Decisions

Plaintiffs challenge various rulings made by the District Court in granting partial summary judgment to defendant. Our review of a grant of summary judgment is plenary. *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 557 (3d Cir.2008). "[W]e assess the record using the same summary judgment standard that guides the district courts." *Id.* Thus, defendant must demonstrate that "there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2).

■ First, plaintiffs contend that a court must always consider fiduciary status in determining whether ERISA preemption applies. Plaintiffs correctly state that the District Court did not consider whether Security was a fiduciary when determining that plaintiffs' state law claims "relate to" an ERISA claim and were therefore preempted. *See* 29 U.S.C. § 1144. However, none of the cases cited by plaintiffs support their position that such an analysis is required. To the contrary, in *Kollman v. Hewitt Associates, LLC,* 487 F.3d 139, 148 (3d Cir.2007), we rejected the plaintiff's contention that his state law claim was "not subject to preemption because [the defendant] is supposedly a nonfiduciary." Instead, we emphasized, the preemption inquiry depends on whether a state law claim implicates the plan's "funding, benefits, reporting or administration." *Id.* at 149–50. Similarly, the court in *Finderne Management Co. v. Barrett,* 355 N.J.Super. 170, 809 A.2d 842, 856 (N.J.Super.Ct.App.Div.2002), referred to fiduciary status only as one of several factors used to assess whether the claims were actually related to an ERISA plan, rather than to duties arising "outside of the ERISA context." The courts in the other cases cited by plaintiffs either did not consider fiduciary status at all or considered it only because such an analysis was required by the specific facts of those cases.

Second, plaintiffs argue that when the District Court was evaluating the terms of the USIA Plan, it improperly confined its analysis to the terms of a single document that the court referred to as the "EPIC Plan Document." JA0025. However, plaintiffs do not identify what other documents the Court should have considered. Nonetheless, we have examined other documents in the record that describe the USIA Plan, including a rider to the Group Life Insurance Policy contract called the "Employers' Rate Stabilization Reserve Endorsement" and brochures regarding the EPIC and GEAR products. Even assuming that the District Court should have considered these documents to be part of the ERISA plan, they do nothing to substantiate plaintiffs' claims.

■ Third, plaintiffs argue that the District Court erred when it concluded that Security had not misappropriated the funds in the reserve. We disagree. The Court properly determined that plaintiffs had no right to the funds in the Rate Stabilization Reserve, except to have the funds used to reduce their insurance premiums after conversion. Section 5.2 of the Plan clearly provides that "[t]he Employer shall have no right, title, or interest in and to the contributions made by it to the Trust; and, no part of the Trust property ... ever shall revert to the Employer." JA0984. Thus, USIA had no right to the reserve funds, and Security's actions could not have constituted misappropriation or conversion.

Fourth, plaintiffs contend that the District Court erred in finding that the EPIC plan did not involve a reserve fund. We are unable to locate such a finding in the record. To the contrary, the Court repeatedly referred to the reserve, both in its summary judgment decisions and when it announced its findings after the bench trial.

### Breach of Fiduciary Duties

Plaintiffs argue that the District Court erred in finding, after the bench trial, that Security had not breached its fiduciary duties. "In an appeal from an ERISA bench trial, we review findings of fact for clear error but have plenary review over the District Court's conclusions of law." *Vitale v. Latrobe Area Hosp.*, 420 F.3d 278, 281 (3d Cir.2005).

Three sections of ERISA are relevant to this issue. 29 U.S.C. § 1106(b) provides that a fiduciary may not "deal with the assets of the plan in his own interest" or receive consideration "in connection with a transaction involving the assets of the plan." Under § 1101(b)(2), however, only certain assets are covered by § 1106: "In the case of a plan to which a guaranteed benefit policy is issued by an insurer, the assets of such plan shall be deemed to include such policy, but shall not ... be deemed to include any assets of such insurer." Finally, § 1108 and Department of Labor guidance known as Prohibited Transaction Exemption 84–24 ("PTE 84–24") both provide exceptions to the prohibitions contained in § 1106(b).

The District Court found that Security was a fiduciary with respect to the life insurance policy owned by the USIA Plan, but not with respect to the contributions made to the plan by plaintiffs. The distinction, according to the Court, lies in § 1101(b)(2). The District Court found that plaintiffs' contributions were deposited in Security's general account, rather than in the USIA Plan itself. Thus, according to the Court, these funds were an asset of the insurer (i.e., Security), and were not plan assets under § 1101(b)(2). Thus, the fiduciary duties contained in § 1106 did not apply to plaintiffs' contributions, but instead applied only to the life insurance policy.

On appeal, plaintiffs challenge the District Court's legal and factual determinations. They argue that Security engaged in self-dealing by arranging for the USIA Plan to purchase GEAR, and then converted plan assets by misappropriating the funds in the Rate Stabilization Reserve. Plaintiffs also argue that Security breached its fiduciary duties by misrepresenting the tax-free status of contributions to GEAR. Plaintiffs further claim that Security violated PTE 84–24 by paying commissions to Tri–Core and Speer and violated § 1108(b)(2) by paying itself excessive compensation. Finally, they argue that the USIA Plan was not a "guaranteed benefit policy," and therefore is not covered by § 1101(b)(2). Thus, according to plaintiffs, the distinction drawn by the District Court between the plan's assets and Security's assets cannot hold.

■ We see no reason to disturb the District Court's determination that Security did not breach its fiduciary duties. The Court properly found that it was plaintiffs, not Security, who decided that the USIA Plan should purchase the GEAR product. Indeed, the USIA Plan was created with the specific purpose of purchasing GEAR. Plaintiffs made this decision after evaluating EPIC and GEAR for two years, and after consulting their attorney and accountant. Thus, contrary to plaintiffs' contention, it was not Security that "arranged for" the GEAR product to be purchased. Nor is there any merit to plaintiffs' claim that Security misappropriated the funds in the Rate Stabilization Reserve. Once plaintiffs decided to stop participating in the plan, they were able to use the funds in the Rate Stabilization Reserve to reduce their premiums, as Security had advertised. Finally, we are not persuaded that we should disturb the District Court's finding that Security did not violate its fiduciary duties with respect to its representations regarding the tax status of the GEAR contributions.

We therefore agree with the District Court that Security did not violate § 1106. As a result, we need not reach plaintiffs' arguments with respect to PTE 84–24, § 1108, or § 1101(b)(2), all of which provide exemptions to the prohibitions contained in § 1106.

### Rulings at Trial

Plaintiffs challenge several evidentiary rulings made by the Court during trial, and the Court's refusal to grant a new trial based on these same issues.

We review a district court's evidentiary rulings for abuse of discretion. *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 211 (3d Cir.2009). We also review the denial of a motion for a new trial for abuse of discretion, but we exercise plenary review over that denial to the extent that it is based on a question of law. *Curley v. Klem*, 499 F.3d 199, 205–06 (3d Cir.2007).

■ Plaintiffs argue that the District Court improperly interfered with their questioning of David Wallman, Security's chief actuary. Plaintiffs complain that the Court inappropriately interrupted and limited their examination when they tried to impeach Wallman with purportedly contradictory testimony given eight years earlier. We disagree. Plaintiffs' questions appeared to be of little relevance, and the Court was properly concerned that they could unduly prejudice jurors' interpretation of Wallman's testimony. The Court's attempts to limit this portion of this examination were well within its discretion to manage the trial.

■ Plaintiffs also argue that the Court erred in refusing to admit certain documents into evidence: a magazine article, letters from former EPIC participants, notes by Security employees, and correspondence between the Internal Revenue

Service and Security. The Court properly concluded that these documents contained information that was either hearsay, irrelevant, or unduly prejudicial, especially in light of the fact that defendant had already stipulated to the facts that plaintiffs were attempting to prove using these documents. We find no abuse of discretion in the Court's rulings.

### Jury Instructions

Plaintiffs argue that the District Court's jury instructions were flawed in several respects.

Our review of jury instructions is plenary, and we reverse if the instructions, as a whole, were capable of confusing and misleading the jury. *Mosley v. Wilson,* 102 F.3d 85, 94 (3d Cir.1996).

■ First, plaintiffs argue that the Court should have instructed the jury that Security was a fiduciary under ERISA, and that it therefore had certain disclosure obligations under ERISA. However, at the close of the jury trial, the Court had not yet determined whether Security was an ERISA fiduciary. Since that determination was irrelevant to the common-law fraud and RICO claims that the jury was asked to decide, and since the determination had not even been made, the Court did not error in refusing to give such an instruction.

Second, plaintiffs argue that the Court should have informed the jury that the GEAR policy contained an indemnification clause that was invalid under 29 U.S.C. § 1110(a), which provides that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability . . . shall be void as against public policy." The indemnification clause was not even being relied on by Security in this litigation, however, and was therefore irrelevant to the case. An instruction to this effect would have only served to confuse the jury.

■ Finally, plaintiffs argue that the Court improperly failed to instruct the jury that plaintiffs could prevail on their misrepresentation claim on either of two theories: that Security misrepresented how the reserve funds would be used, or that Security misrepresented the tax-deductible nature of plaintiffs' contributions. The Court was not required to give such a specific instruction. The Court did instruct the jury that the misrepresentation had to be of a material "statement of fact." JA2042–43. This instruction was broad enough to encompass both of plaintiffs' theories.

We therefore conclude that the jury instructions were not erroneous in any of the respects urged by plaintiffs.

### Conclusion

We will AFFIRM the order of the District Court.